SAMUEL R. HARDING AND DEBORAH B. HARDING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harding v. Commissioner
Docket No. 22145-84.
United States Tax Court
T.C. Memo 1986-299; 1986 Tax Ct. Memo LEXIS 312; 51 T.C.M. (CCH) 1461; T.C.M. (RIA) 86299; July 21, 1986. William A. Diamond, for the petitioners William Ringuette, for the respondent DRENNEN
MEMORANDUM OPINION DRENNEN, Judge: Respondent determined the following income tax deficiencies and additions to tax: Income Tax
Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
1979
$3,055.42
$1,527.71
1980
4,520.31
2,260.16
The issues for decision are: (1) whether petitioners are liable for the addition to tax for fraud under section 6653(b) for taxable years 1979 and 1980; and (2) whether the assessment and collection of any taxes and additions to tax for taxable year 1979 is barred by the statute of limitations. This case was submitted fully stipulated. The stipulations of fact and the exhibits attached thereto are incorporated herein by this reference. The facts related herein were either stipulated or are derived from affidavits of various individuals *314 and memoranda that the parties stipulated into the record and agreed that they could be considered as testimony given in this proceeding. Petitioners resided in Chester, Virginia during taxable years 1979 and 1980 and at the time they filed their petition herein. Petitioner Samuel R. Harding was employed as an electrical engineer and petitioner Deborah B. Harding was employed as a chemical engineer during the years in question. Petitioners do not have a special tax education or background. On September 13, 1979, petitioners purchased a charter from Liberty Ministries, International ("LMI"), which established Solar Oriented Life Church ("SOL"), as one of LMI's auxiliary organizations. A packet of literature sent to petitioners from LMI set forth a method by which LMI claimed petitioners could organize an "in-home-church" affiliated with LMI which would qualify as a tax exempt organization under section 501(c)(3). Included in the instructional packet was a tax advice letter from William M. Morris, MBA and CPA and an "opinion letter" of Paul Younghanz, CPA. Both letters contained instructions on how to claim deductions for contributions to LMI sponsored "churches." Also included *315 in the packet was a charter for a LMI auxiliary chapter, a certificate of ordination appointing petitioners as ministers of LMI, a letter directing petitioners to serve their LMI chapter by continuing in their present occupations, a constitution and by-laws for establishment of petitioners' LMI auxiliary chapter and sample minutes of board of trustees and board of directors meetings. Petitioners showed the instructional packet to Mr. James Crawley, an accountant acquainted with petitioners, who prepared petitioners' 1978 income tax returns. Mr. Crawley did not review the material, but told petitioners he had not "heard of this (forming an in-home-church) being done." Petitioners and a Mr. Charles Jacobs signed Articles of Incorporation of SOL dated and notarized November 3, 1979. Petitioners followed substantially all the formalities contained in the documents provided by LMI in organizing SOL as an affiliate of LMI. [2]
*316 In December 1979 petitioners paid $5,200 to SOL by checks drawn on their personal account at First and Merchants National Bank. On or about April 15, 1980, petitioners timely filed a joint Federal income tax return for taxable year 1979 and claimed charitable contributions of $8,797.45 which included the $5,200 payment to SOL and a $3,000 payment to LMI. The $3,000 payment represented the purchase price of the instructional packet and forms produced by LMI. In calendar year 1980, petitioners paid a total of $13,700 to SOL as evidenced by six checks drawn on their personal account at First and Merchants National Bank. On or about April 14, 1981, petitioners timely filed a joint Federal income tax return for taxable year 1980 and claimed charitable contributions of $14,300 which included $13,700 paid to SOL. Petitioners' payments to SOL were deposited into a bank account established by petitioners in the name of SOL at Southern Bank and Trust Company, Richmond, Virginia. Portions of the money deposited in the SOL account were used to pay personal expenses of petitioners, including payments for electrical and telephone services to petitioners' home, and gasoline for petitioners' *317 automobile. Petitioners knew that funds in the SOL account were used to pay their personal expenses. Petitioners were first contacted by respondent's agent on or about July 29, 1981, when respondent requested verification of the charitable contributions petitioners claimed on their 1979 and 1980 Federal income tax returns. Petitioners were again interviewed by respondent's special agents at their home on November 4, 1981. In that interview, petitioners stated that payments to LMI and SOL were legitimate contributions and that funds contributed to SOL were used strictly for church purposes. Petitioners falsely stated they did not receive any personal benefit from the funds they contributed to SOL. Petitioners agreed to submit their personal records but sought legal advice before releasing records of SOL. After consulting legal counsel, petitioners agreed to provide books and records relating to their personal affairs and those of SOL. [3]
From January 1982 to February *318 1983 respondent's special agents interviewed and obtained statements from petitioners' friends, neighbors and one-time accountant. Respondent issued a statutory notice of deficiency dated and mailed April 5, 1984, wherein respondent disallowed all contributions which petitioners claimed on their 1979 and u980 Federal tax returns for payments to LMI and SOL. The founders and officers of LMI gave false and fraudulent advice, instructions, and documents to petitioners on ways to reduce their personal income tax by establishing an in-home-church. In 1984, the founders and officers of LMI were indicted and convicted of violations of United States tax laws in connection with the operation of LMI by the United States District Court for the Eastern District of Virginia, Richmond Division. Petitioners concede on brief that respondent properly disallowed the deductions for contributions to LMI and SOL. However, petitioners argue that respondent was in error in asserting the fraud penalty under section 6653(b) and that the statute of limitation bars assessment and collection of any tax and additions for taxable year 1979. OPINION The first issue is whether petitioners are liable for *319 the addition to tax for fraud under section 6653(b). For purposes of section 6653(b), fraud is an intentional wrongdoing with a specific intent to evade a tax believed to be owed. , cert. denied ; , affd. . The existence of fraud is a question of fact to be resolved upon consideration of the entire record. ; , affd. in an unpublished opinion . The burden of proof is on respondent to prove fraud by clear and convincing evidence. Section 7454(a); Rule 142(b). Fraud is not to be imputed or presumed. ; . Because direct proof of fraudulent intent is seldom available, respondent may show requisite intent from the conduct of the taxpayer and the surrounding circumstances. *320 ; . However, courts should not sustain findings of fraud upon circumstances which at most create only a suspicion. . Respondent argues that petitioners' false statements to respondent's agents on November 4, 1981, "should be sufficient by themselves to sustain the fraud penalty against the petitioners for both of the years involved." We disagree. False statements may be an indicium of fraudulent intent, but we do not find petitioners' statements sufficient to infer fraud in this case. Although not controlling, the memorandum decisions cited by respondent in support of his argument [4] are clearly distinguishable from the case before us. In those cases, the fraud penalty was imposed against taxpayers whose conduct showed a consistent, regular pattern of making false or misleading statements to Internal Revenue Service agents. [5] No such consistent or regular pattern exists in the case before us. Furthermore, the false statements made by the taxpayer in each case was only one of *321 several factors the court found demonstrative of taxpayers' fraudulent intent. Although we do not condone such behavior, we are not convinced that petitioners' false statements alone are sufficient to establish fraud. *322 Respondent next argues that evidence of fraudulent intent can be found in petitioners' decision to proceed with formation of SOL after being told by petitioners' accountant that the in-home-church was a scam. We do not agree with respondent's interpretation of the facts. In his statement stipulated as evidence in this case, petitioners' accountant, Mr. Crawley, stated that a conversation with petitioners led him to the opinion that the in-home-church was a "tax scam." However, the record does not show that Mr. Crawley shared this conclusion with petitioners. Mr. Crawley stated, "He (petitioner Samuel R. Harding), asked me if I knew how he could set himself up as a church, to which I replied I had never heard of this being done. I have had no further conversations with Harding concerning this matter." Respondent failed to further question Mr. Crawley or petitioners about the above referenced conversation. The record is too vague to infer fraudulent intent from this conversation. Respondent further argues that petitioners no longer used Mr. Crawley to prepare their tax returns because they knew that he would not prepare returns showing charitable contributions to SOL. From this *323 respondent would infer fraudulent intent. However, petitioners offered a reasonable explanation for their decision. Prior to 1978 petitioners prepared their own returns. Petitioners stated they requested Mr. Crawley's assistence in 1978 because they relocated to Virginia from North Carolina and were required to file tax returns in both states. After 1978 petitioners again prepared their own returns. Respondent failed to establish by clear and convincing evidence that an inference of fraudulent intent was justified from petitioners' choice not to use Mr. Crawley's services. Furthermore, the evidence indicates that petitioners made no effort to conceal their activities or mislead the respondent concerning their position with regard to LMI and SOL. They appear to have reported their gross income as their own and claimed deductions for the amounts they claim to have contributed to those organizations. While LMI and SOL were not named on petitioners' returns as the recipients of their contributions, respondent had no difficulty in discovering the facts. The bank records were sufficient for that purpose, but it also appears that petitioners were generally cooperative with respondent's *324 agents during the audit. While such disclosure and cooperation does not necessarily disprove fraud, such factors can be given consideration in determining petitioners' intent in failing to report tax on all of their taxable income. [6]
We have considered respondent's other arguments but find that respondent has not proved fraud by clear and convincing evidence. [7]
The final issue is whether the assessment and collection of any tax for taxable year 1979 is barred by the statute of limitations. Petitioners timely filed their 1979 Federal income tax return on April 15, 1980. Absent a showing of fraud, the period of assessment for deficiencies expired under section 6501 on April 15, 1983. Respondent issued *325 a statutory notice of deficiency April 5, 1984; almost one year beyond the statutory limit. We have found that respondent failed to prove by clear and convincing evidence that petitioners' returns for 1979 and 1980 were false or fraudulent with intent to evade tax. Consequently, assessment and collection of taxes for taxable year 1979 is barred by the statute of limitations. Section 6501. Assessment and collection of the stipulated underpayment of tax for the taxable year 1980 is not barred by the statute of limitations. Decision will be entered for petitioners for the year 1979.
Decision will be entered for respondent for the deficiency in tax for the year 1980.
Decision will be entered for petitioners on the additions to tax under section 6653(b) for taxable years 1979 and 1980.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during the taxable years in question, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. By letter dated July 22, 1980, LMI's "certification committee" recommended changes in SOL's performance. A "qualification form" outlining LMI's suggestions was not included in the exhibits submitted to this Court. However, after a careful review of the entire record we are satisfied that petitioners complied with substantially all of the qualification standards set forth by LMI.↩
3. Petitioners objected to respondent's summons of the bank records of petitioners' personal accounts and those of SOL but subsequently withdrew their objection on August 11, 1982, on advice of counsel.↩
4. Respondent also cited an Eighth Circuit decision, . The Court of Appeals rules only on the admissibility of false statements and documents which had a bearing on the question whether the defendants which had a bearing on the question whether the defendant willfully filed a false return under section 7201 and section 7206. The court held that the statements were admissible, but did not address the weight to be given false statements in imposing the fraud penalty under section 6653(b).↩
5. In , taxpayer deliberately lied on four separate occasions to the investigating Internal Revenue Service agent. Taxpayer also denied existence of a bank account later proved maintained by him under a ficticious name. In imposing the fraud penalty under section 6653(b), the Court concluded taxpayer "significantly, systematically, and consistently understated his income." The Court's decision was also based on taxpayers' "maintenance of inadequate and incomplete records" and "consistent pattern of making false statements." In , taxpayer took checks payable to his corporation and deposited them into his personal account in a manner which would conceal the existence of the checks from the corporation's bookkeeper and certified public accountant. In imposing the fraud penalty for understatement of income the Court listed several relevant factors it considered. These included three conflicting stories told to Internal Revenue Service agents by taxpayer in an attempt to identify the source of funds in his personal account. Also mentioned was the fact that taxpayer's conduct was "carefully orchestrated to avoid detection." The Court concluded that the "cumulative weight" of the factors established taxpayer's fraud by clear and convincing evidence.↩
6. See .↩
7. Respondent alleges petitioners may have back-dated incorporation documents of SOL, stating, "one wonders whether or not the minutes (which were not produced to the investigating agents) were not back-dated by the petitioners." As we stated in ,↩ courts should not sustain findings of fraud upon circumstances which at most create only a suspicion.